## MORRIS *v.* VEACH & COMPANY.

1. When one induced another to purchase stock in an incorporated company and in consideration thereof undertook in writing to guarantee to pay to the subscriber " one hundred cents in the dollar" for the stock " within ninety days from the date" of such agreement, the purchaser could not maintain against the guarantor an action upon the contract without show_ ing affirmatively that in due time he had tendered the stock to the latter and demanded of him payment in accordance with the terms of the agreement.

2. An agreement in writing that a subscriber for stock in an incorporated company was to be held " harmless from any . . loss or damage or liability whatever as a stockholder," and that he should "in no way suffer any loss or damage by reason of [his] connection with said company as a stockholder," was not an undertaking to guarantee the subscriber against loss sustained by reason of the stock having become worthless on the market.

3. The contract involved in the present case, when construed as a whole, can not be held to contain an unconditional agreement to pay the par value of the shares of stock therein referred to within ninety days from the date of the contract.

Argued June 8, — Decided July 14, 1900.

Complaint. Before Judge Calhoun. City court of Atlanta. September term, 1899.

*C. J. Simmons*, for plaintiff in error.
*Rosser & Carter*, contra.

COBB, J. Veach & Company brought suit against Morris, alleging in their petition that the defendant was indebted to them upon a contract of guaranty. The paper containing this contract recited in a preamble that a corporation known as the Atlanta Grocery Company had been organized in the city of Atlanta; that Veach & Company had subscribed for twelve shares of the capital stock, which subscription was to be paid with a note of the defendant Morris for $1,199.10 payable to plaintiffs; that N. W. Murphy and Morris had agreed to guarantee that plaintiffs should receive one hundred cents in the dollar for the amount of stock subscribed, on or before the expiration of ninety days from the date of the signing of the contract; and that the plaintiffs were to be held harmless from any liability, loss or damage by reason of their subscription. The stipulations in the contract are as follows: " Now, therefore, in consideration of the surrender by said J. M. Veach & Company

of said note of C. M. Morris in payment of said stock, said N. W. Murphy and C. M. Morris hereby obligate themselves severally and jointly to pay said J. M. Veach & Company one hundred cents in the dollar for said twelve shares, cash, within ninety days from the date of this agreement and guaranty, and further obligate themselves severally and jointly to hold said Veach & Company and each of them harmless from any liability on said stock, and from any loss or damage or liability whatever as a stockholder in said Atlanta Grocery Co.   It is the express purpose of this agreement and guaranty that said J. M. Veach & Company, nor either of them, shall be in any way liable as stockholders in said Atlanta Grocery Co., and that they shall in no way suffer any loss or damage by reason of their connection with said company as a stockholder, and that said N. W. Murphy and C. M. Morris severally and jointly guarantee J. M. Veach & Company, and each of them, against any such liability, loss or damage." The contract was dated June 11, 1894, and was signed by Murphy and Morris.   To the action Morris filed an answer, in which it was set up that the plaintiffs had not tendered to him, either within ninety days or at any time, the twelve shares of stock referred to in the contract.   The answer further alleged that "plaintiffs retained said stock as their own until long after the Atlanta Grocery Company had failed and become insolvent, and the insolvency and failure of said Company occurred long after the expiration of ninety days after the date of said contract, being the time mentioned in said contract."   And, "that no demand was made on him until just before the bringing of the suit, and not until long after the Atlanta Grocery Company had become insolvent and said stock worthless."   It appeared at the trial that Murphy had made certain payments to the plaintiffs upon the contract, which reduced the sum claimed by them to be due to the amount sued for in the present case.   The judge directed a verdict in favor of the plaintiffs, and to this judgment, as well as to other rulings made at the trial, the defendant excepted.

The contract involved in the present case, properly construed, contains two separate and distinct undertakings on the part of Murphy and Morris:   (1) They were bound to pay to the plaintiffs one hundred cents in the dollar for the twelve shares of

stock within ninety days from the date of the contract, provided
the plaintiffs desired to sell the stock and so notified Murphy
and Morris within ninety days; (2) they were further bound
to indemnify the plaintiffs against loss on account of their sub-
scription to the stock in the Atlanta Grocery Company, in the
event the plaintiffs were held liable in any way on account of
that subscription, or in any other way by reason of their con-
nection with the company as a stockholder.   When the parties
entered into the contract sued on, there were in all probability,
in the minds of the plaintiffs two contingencies which might
arise that they desired to so guard as to protect themselves from
possible loss: first, they might not desire to continue as stock-
holders in the company; and, second, their subscription to stock
not having been paid in money but in property, some question
might arise as to the real value of the property; and if it
was worth less than the amount of their subscription, they
might for this reason be held liable on their stock subscription
or in some other way on account of their connection with the
company.   The first contingency was provided for in the un-
dertaking first referred to, and the second in the undertaking last
referred to.   In order for the plaintiffs to recover for a breach of
the undertaking first mentioned, it is absolutely necessary that
they should allege and prove that there had been a tender of
the stock to the defendant and a demand for the par value of the
same, if not within ninety days from the date of the contract,
at least before the suit was brought.   They obligated themselves
to pay a certain amount "for said twelve shares," and it was
certainly contemplated that the payment of the amount stipu-
lated should result in their obtaining that for which they had
paid, to wit, the twelve shares of stock.   In order for the plain-
tiffs to recover for a breach of the undertaking last mentioned,
it is incumbent upon them to allege and prove that they had
been held liable on their subscription to the stock or had
been endamaged in some way on account of their connection
with the company as a stockholder.   Neither the averments of
the petition, nor the evidence at the trial, authorized a recov-
ery for a breach of either undertaking.

It was contended that the contract amounted to a guaranty
that the plaintiffs would not suffer loss on account of the insolv-

ency of the company and the consequent depreciation and possible destruction of the market value of the stock. We do not think the contract capable of this construction. Fairly construed, the contract can not mean other than what we have above indicated. An undertaking to pay one hundred cents in the dollar for shares of stock within a given time certainly can not amount to an undertaking to indemnify a person against loss resulting from the stock becoming worthless on the market after the expiration of that time. Neither can an undertaking to hold a person harmless from liability on a subscription to stock in an incorporated company and from loss or damage or liability as a stockholder in such a company, or from loss or damage by reason of connection with the company as a stockholder, be held to mean that the person so indemnified will be held harmless if the stock depreciates in market value or for any reason becomes worthless on his hands. While the language of the contract is broad, it is not so broad as to authorize a holding that the defendant would be liable to the plaintiffs for loss sustained by them on account of the corporation having become insolvent and the stock having in consequence been rendered worthless. Neither can the contract be properly construed to contain an unconditional agreement to pay within ninety days a sum of money equal to the par value of the twelve shares of stock. If the plaintiffs had in due time tendered to the defendant the shares of stock, they could have compelled him to pay, according to the stipulations in the contract, one hundred cents in the dollar; or if the plaintiffs are ever held liable or sustain damage on account of having subscribed for the stock or having become connected with the company as stockholder, the terms of the contract are broad enough to amount to an indemnity against loss or liability of this character. But loss or liability incident to the destruction of the market value of the stock is not a loss or liability covered by the terms of the instrument, and the defendant would not be liable even if the plaintiffs had sustained such loss. It would, we think, be straining the language of the contract, broad though it is, to hold that the defendant agreed to guarantee that the twelve shares of stock should always be worth one hundred cents on the dollar, or that the plaintiffs would

be entitled to this amount whenever they desired to call for the same, whether the stock was worthless or not. The court erred in directing a verdict for the plaintiffs.

*Judgment reversed. All the Justices concurring.*